UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT

BAP NO.: SC-06-1132-MoSnK
SC-06-1063-MoSNK
(Consolidated)

BK NO.:  04-02787

ADV NO.: 06-90460

**FILED**

DEC 2 8 2006

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

In re: JILL C DEUEL

                    Debtor
-------------------------

HAROLD S. TAXEL, Chapter 7 Trustee

                    Appellant

    v.

JILL C. DEUEL; CHASE MANHATTAN BANK, U.S.A., N.A.; LAKE VIEW
CARLTON HILLS HOMEOWNERS ASSOCIATION; WILL T. DEUEL

                    Appellee


JUDGMENT
------------------------------------------------------
    ON APPEAL from the United States Bankruptcy Court for

the Southern District of California.

    THIS CAUSE came on to be heard on the record from the

above court and was argued by counsel.

    ON CONSIDERATION WHEREOF, it is ordered and adjudged by

this Panel that the judgment of the Bankruptcy Court is REVERSED

and REMANDED with directions to grant trustee's motion for summary

judgment and enter a judgment in favor of trustee.

                              FOR THE PANEL,

                              Harold S. Marenus,
                              BAP Clerk

                              By: Vincent J. Barbato
                                  Deputy Clerk

BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT
A True Copy
Attest:

Harold S. Marenus, Clerk

Deputy Clerk   1-31-07

# FILED

ORDERED PUBLISHED

**DEC 28 2006**

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT

A True Copy
Attest:

L. ... S. Marenus, Clerk

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos.  SC-06-1132-MoSnK |
| JILL C. DEUEL, | SC-06-1063-MoSnK |
| | (Consolidated) |
| Debtor. | Bk. No.   04-02787 |
| | Adv. No.  06-90460 |
| HAROLD S. TAXEL, Chapter 7 Trustee, | |
| Appellant, | |
| v. | **O P I N I O N** |
| CHASE MANHATTAN BANK, USA, N.A.; JILL C. DEUEL; WILL T. DEUEL; and LAKE VIEW CARLTON HILLS HOMEOWNERS ASSOCIATION, | |
| Appellees. | |

Argued and Submitted on September 22, 2006
at Pasadena, California

Filed - December 28, 2006

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable John J. Hargrove, Bankruptcy Judge, Presiding.

---

Before: MONTALI, SNYDER,[1] and KLEIN, Bankruptcy Judges.

---

[1] Hon. Paul B. Snyder, Bankruptcy Judge for the Western District of Washington, sitting by designation.

1  MONTALI, Bankruptcy Judge:

2

3      One of the most powerful weapons in a bankruptcy trustee's
4  arsenal is the "strong arm" power of Section 544(a)(3)[2] to recover
5  real property, subject to the same limitations that a bona fide
6  purchaser would have when acquiring that property from the debtor
7  outside of bankruptcy.  Trustees for decades have defeated
8  unperfected liens and unrecorded transfers, all to the benefit of
9  unsecured creditors in bankruptcy.

10      The bankruptcy court rejected a trustee's attempt to exercise
11  that power, relying on a Ninth Circuit decision holding that a
12  petitioning creditor's unrecorded lien that is described in an
13  involuntary bankruptcy petition operates as constructive notice
14  sufficient to defeat the trustee.  In re Professional Investment
15  Properties of America, 955 F.2d 623 (9th Cir. 1992) ("Professional
16  Investment").  But the court of appeals carefully limited its
17  decision to the effect of the petition in the involuntary case, as
18  distinguished from the schedules.  Id. at 628 n.3, citing with
19  approval, In re Gurs, 27 B.R. 163, 165 (9th Cir. BAP 1983)[3].

20  _____

21      [2]  Unless otherwise indicated, all chapter, section and rule
    references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and
22  to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as
    enacted and promulgated prior to the effective date of The
23  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,
    Pub. L. 109-8, 119 Stat. 23, because the case from which this
24  appeal arises was filed before its effective date (generally
    October 17, 2005).
25

26      [3]  Responding to the trustee's argument that information
    received after the filing of the involuntary petition could not
27  affect his status, the court responded (in footnote 3):

28          This is true.  In re Gurs, 27 B.R. 163 (9th Cir. BAP
            1983) defined a § 544(a)(3) hypothetical bona fide
            purchaser as one who is without actual knowledge "at the
            instant the petition is filed," and purchases property
            from the debtor for value and in good faith.
                                            (continued...)

1    Today we confirm that the trustee still has that powerful
2 weapon, concluding that information contained in schedules and the
3 statement of financial affairs filed in a voluntary bankruptcy
4 case is not subject to the Professional Investment rule, and
5 therefore is insufficient to defeat the trustee's power,
6 regardless of notice.  Thus we reject the bankruptcy court's
7 contrary holding, which could operate to eviscerate a well-
8 established avoiding power.

9    We also reject the bankruptcy court's alternative use of
10 equitable subrogation to rescue a creditor that voluntarily
11 released its previous lien on the debtor's property but neglected
12 to record its new lien.  Equitable subrogation would unduly
13 prejudice the debtor's other creditors and the bankruptcy estate
14 and cannot override the trustee's statutory strong arm power.

15    Accordingly, we REVERSE.

16                         I.    FACTS

17    There are no material facts in dispute.  In 1999 debtor Jill
18 C. Deuel ("Debtor") and her former spouse Will T. Deuel
19 (collectively, the "Deuels") purchased a residence in Santee,
20 California (the "Property").  In 2001 they refinanced the Property
21 with a $122,400.00 loan secured by a recorded deed of trust that
22 was assigned to an affiliate of Chase Manhattan Bank USA, N.A.
23 ("Chase") (the "Prior Deed of Trust").  On September 4, 2002, the
24 Deuels refinanced this debt with a new $136,000.00 loan from Chase
25 secured by a new deed of trust against the Property which by
26
27
28

---

[3](...continued)
        Consequently, we will only discuss the ramifications of
        the petition itself.

-3-

1  mistake was not recorded (the "Unrecorded Deed of Trust").  The
2  Deuels used $121,170.79 of the new loan to pay off the balance of
3  the 2001 loan.  The Prior Deed of Trust was reconveyed by an
4  instrument recorded on September 26, 2002.

5       Debtor filed her voluntary Chapter 7 bankruptcy petition that
6  commenced this case on March 26, 2004 (the "Petition Date").
7  Harold S. Taxel was appointed as Chapter 7 trustee ("Trustee").

8       With her bankruptcy petition Debtor filed her bankruptcy
9  schedules and statement of financial affairs ("SFA") which
10 mentioned Chase's claim and alleged lien in several places.  In
11 Schedule A (Real Property), she listed a "secured claim" of
12 $134,740.00 against the Property.  In Schedule D (Creditors
13 Holding Secured Claims), she listed a claim held by Chase with a
14 balance of $134,165.00, and stated:  "Incurred: 2002, Lien: deed
15 of trust, Security: [the Property]."  In SFA item 3, she listed
16 prepetition payments of $1000 per month to Chase.  Attached to her
17 SFA is a copy of her 2003 mortgage interest statement from Chase.

18      On October 26, 2004, Chase filed in the bankruptcy court a
19 Complaint to Quiet Title to Deed of Trust Against Real Property,
20 naming as defendants the Deuels, Trustee, and Lake View Carlton
21 Hills Homeowners Association (the "HOA").  Trustee filed a motion
22 to dismiss the complaint and in the alternative for summary
23 judgment.  The Deuels filed joinders.  Chase filed an opposition
24 and a cross-motion for summary judgment.

25      On January 5, 2005, the bankruptcy court held a hearing on
26 these various motions and stated:

27                . . . the schedules filed with the petition . . .
                  provide constructive notice to the trustee as a
28                bona fide purchaser of real property, that there

                                -4-

1             was a secured claim out there . . . .

2                 So it appears that, under the law of the Ninth

3  Circuit -- and I guess most specifically the circuit case is [In re] Professional Investment

4  Properties of America [955 F.2d 623 (9th Cir. 1992)] -- that the trustee in this case was on

5  constructive notice that this security interest existed;  and therefore under the law of the

6  circuit, he is unable to set aside the lien, so to speak, or take priority over the bank under Section

7  544(a)(3).

8  Transcript Jan. 5, 2005, pp. 3:22-4:15.

9      The bankruptcy court also ruled in favor of Chase on grounds

10  of equitable subrogation, Chase's alternative basis for relief.

11  Chase argued that it was equitably subrogated to the (released)

12  lien created by the Prior Deed of Trust.  The bankruptcy court

13  stated that all the elements of equitable subrogation appeared to

14  be satisfied.  Among other things:

15             [T]here is case law out there . . . I think it was

16  a case out of Hawaii that was cited by the [T]rustee [In re Christie-Pequignot, 2003 WL

17  22945921 (Bankr. D. Hi. October 24, 2003), aff'd BAP No. HI-03-1563-KMoB (9th Cir. BAP August 11,

18  2004)], showing that even if there is neglect, as long as there is no injustice to the [T]rustee or

19  the other creditors -- in other words, they're not worse off -- then the equitable subrogation would

20  apply.

21          . . . .

22             As the bank points out, under equitable subrogation the [T]rustee and the creditors would

23  be better off to the tune, I think, of about $15,000, because the bank would only step into the

24  shoes, so as to speak, of the original Chase loan, and as I recall, that was about $15,000 less than

25  the loan which is the subject of this adversary proceeding.  I guess there were some additional

26  charges.

27          . . . So if the doctrine of equitable subrogation applies, Chase is only subrogated to

28  the amount of 122,400 and not the new amount of a hundred and thirty-six.  So there clearly is

-5-

benefit to the trustee and the creditors.[4]   But
it does appear that equitable subrogation does
apply, and I would find -- I would also grant the
summary judgment in that regard for the bank.

Transcript Jan. 5, 2005, pp. 9:25-11:1 (emphasis added).

The bankruptcy court entered an order denying defendants'
motions and granting Chase's cross-motion for summary judgment and
thereafter issued a judgment in favor of Chase.  Both the order
and the judgment state that the defendants "have no right, title,
interest or lien in or to the Property senior to the lien/security
interest of [Chase] under the [Unrecorded] [D]eed of [T]rust."

Trustee filed timely notices of appeal from both the order
(SC-06-1063) and the judgment (SC-06-1132) and on his application
we consolidated the two appeals.  The notices of appeal were
served on both of the Deuels and the HOA and name them as parties,
but they have not participated in this appeal.

## II.  ISSUES

A.    Is Trustee's status as a hypothetical bona fide
purchaser under Section 544(a)(3) defeated by constructive or
inquiry notice of Chase's Unrecorded Deed of Trust from Debtor's
bankruptcy schedules and SFA?

B.    Does the doctrine of equitable subrogation apply?

## III.  JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C.

---

[4]   We read the bankruptcy court's comments about Trustee and
creditors receiving a "benefit" and not being "worse off" to mean
that it believed the bankruptcy estate was better off with Chase
having a lien of $122,400 instead of $134,165.  This appears to
assume that Chase would otherwise be entitled to a lien of
$134,165, which we reject below.  Without any Chase lien, the
estate is obviously "better off."

-6-

1 § 157(b)(2)(K).  We have jurisdiction under 28 U.S.C. § 158(c).

2                    **IV.   STANDARDS OF REVIEW**

3      We review de novo the bankruptcy court's rulings on the

4 cross-motions for summary judgment and the motion to dismiss.  In

5 re Garske, 287 B.R. 537, 541 (9th Cir. BAP 2002) (summary

6 judgment); In re Laizure, 349 B.R. 604, 606 (9th Cir. BAP 2006)

7 (motion to dismiss complaint).

8      Although there is usually a factual question whether a

9 purchaser has inquiry or constructive notice (Professional

10 Investment, 955 F.2d at 626) we believe that the bankruptcy court

11 properly treated as a legal question whether a debtor's bankruptcy

12 schedules impart constructive or inquiry notice.  Cf. In re Kim,

13 161 B.R. 831, 836-37 (9th Cir. BAP 1993) (whether legally

14 defective abstract of judgment gave constructive or inquiry notice

15 was not a factual issue precluding summary judgment).

16      In the circumstances of this case, whether to apply the

17 doctrine of equitable subrogation may also be an issue of law that

18 we review de novo.  See Mort v. U.S., 86 F.3d 890, 893 (9th Cir.

19 1996) (deciding equitable subrogation issue, which district court

20 had declined to decide, when "facts are undisputed and further

21 factfinding is unnecessary").  We do not decide the proper

22 standard of review because we would reach the same result on the

23 equitable subrogation issue were we to review it for abuse of

24 discretion.  See U.S. v. Avila, 88 F.3d 229, 239 n. 12 (3d Cir.

25 1996) (assuming without deciding that application of equitable

26 subrogation doctrine is reviewed for abuse of discretion).  See

27 also Dieden v. Schmidt, 128 Cal.Rptr.2d 365, 372 (2002) (stating,

28 in a case involving equitable subrogation, "Summary judgment

                              -7-

1  motions usually raise matters of law, but not when the trial court
2  grants or denies such a motion on the basis of equitable
3  determinations.  The matter then becomes one of discretion, which
4  this court reviews under the abuse of discretion standard.")
5  (citation omitted).

**V.  DISCUSSION**

A.  Trustee's strong arm power arises "as of the
     commencement of the case," before there can be any
     constructive notice from Debtor's bankruptcy schedules

10  Chase makes no arguments against Trustee's strong arm power
11  other than its reliance on Professional Investment and on
12  equitable subrogation.  The single question presented in this
13  section of our discussion, therefore, is whether Professional
14  Investment compels us to affirm.

15  Professional Investment acknowledges both the power of and
16  limitations on the trustee's strong arm power.  On the one hand,
17  the trustee's status as a hypothetical bona fide purchaser is
18  "without regard to" any actual knowledge of the trustee or of any
19  creditor.  11 U.S.C. § 544(a)(3).  On the other hand, the trustee
20  only obtains those rights that a hypothetical purchaser without
21  actual knowledge could have obtained under applicable law at the
22  time the bankruptcy is commenced.  Professional Investment, 955
23  F.2d at 627 (following McCannon v. Marston, 679 F.2d 13, 17 (3d
24  Cir. 1982)); In re Weisman, 5 F.3d 417, 420-21 (9th Cir. 1993).
25  Thus "[a] trustee does not become a hypothetical bona fide
26  purchaser if she [or he] has been put on constructive or inquiry
27  notice."  Professional Investment, 955 F.2d at 627.  See also 5 A.
28  Resnick & H. Sommer, Collier on Bankruptcy ¶¶ 544.03, 544.08,

-8-

1  pp. 544-9 et seq ("Collier") (trustee deemed to have conducted

2  title search and is subject to constructive or inquiry notice).[5]

3      In this case the timing of any constructive or inquiry notice

4  is critical.  The bankruptcy court held that Trustee had

5  constructive notice of Chase's Unrecorded Deed of Trust from

6  Debtor's bankruptcy schedules.  We hold that whatever the Trustee

7  learned from the schedules and SFA came too late and is

8  irrelevant.

9      Section 544(a)(3) provides:

10          (a) The trustee shall have, as of the commencement
            of the case, and without regard to any knowledge of
11          the trustee or of any creditor, the rights and
            powers of, or may avoid any transfer of property of
12          the debtor or any obligation incurred by the debtor
            that is voidable by --
13
                        * * *
14
            (3) A bona fide purchaser of real property,
15          other than fixtures, from the debtor, against
            whom applicable law permits such transfer to
16          be perfected, that obtains the status of a
            bona fide purchaser and has perfected such
17          transfer at the time of the commencement of
            the case, whether or not such a purchaser
18          exists.

19  11 U.S.C. § 544(a)(3) (emphasis added).

20      A case is "commenced" by the filing of a petition.  11 U.S.C.

21  §§ 301(a), 302(a), 303(b); Fed. R. Bankr. P. 1002(a).  Thus the

22  bankruptcy trustee has the status of a bona fide purchaser "at the

23  instant the petition is filed."  Professional Investment, 955 F.2d

24  at 628 n. 3 (quoting In re Gurs, 27 B.R. 163, 165 (9th Cir. BAP

25  1983)).  As the Ninth Circuit recognized in Professional

26  Investment, "any information or notice which [the trustee]

27

28      [5]  This discussion will refer to constructive or inquiry
        notice interchangeably.  No party has suggested that there is any
        difference for purposes of this appeal.

                                -9-

1  attained _after_ that period [i.e., after the filing of the
2  petition] did not bear on his status as a bona fide purchaser at
3  the time of filing."  _Professional Investment_, 955 F.2d at 628 and
4  n. 3 (emphasis added).[6]

5      The bankruptcy schedules, SFA, and other required documents
6  cannot be filed until there is a case in which to file them.  As
7  the applicable rules state, they must be filed "[i]n" a case.
8  Fed. R. Bankr. P. 1007(a)-(c).  _See_ _In re Castro_, 158 B.R. 180,
9  183 (Bankr. C.D. Cal. 1993) ("The filing of a voluntary petition,
10  not the schedules, commences the case.").  _See also_ _Harvey_, 222
11  B.R. at 895 nn. 11-12 (noting trustee's argument that bankruptcy
12  schedules "are deemed filed _after_ the filing of the petition that
13  commences a bankruptcy case," but not deciding issue because other
14  argument was dispositive) (emphasis in original).

15      In some cases (including this one) the bankruptcy schedules
16  and other documents are presented for filing with the petition.
17  That does not make them the same document, as evidenced by the
18  separate Official Forms for each of them.  _Compare_ Official Forms
19  1 (voluntary petition) _and_ 5 (involuntary petition) _with, e.g.,_
20  Official Forms 6, 6A through 6J, and 7 (bankruptcy schedules and
21  SFA).  _See also_ _Castro_, 158 B.R. at 183 ("[T]he petition and the
22  schedules are separate documents.").  Indeed, the Federal Rules of

23  _____

24      [6]  The Ninth Circuit was applying Washington state law and
   this case involves California law but no party has cited any
25  authority that this makes any difference or that notice _after_ the
   filing of the petition would be sufficient to defeat Trustee's
26  status as a bona fide purchaser in this case.  _See_ _Professional_
   _Investment_, 955 F.2d at 627 (bona fide purchaser must be without
27  notice "_prior_ to his acquisition of title") (emphasis added,
   citation omitted); Wash. Rev. Code § 65.08.070 (race notice
28  statute); _In re Harvey_, 222 B.R. 888, 893 (9th Cir. BAP 1998)
   (applying California law); Cal. Civ. Code §§ 19 (constructive
   notice generally), 1213 (constructive notice re real property),
   _and_ 1214 (race notice statute).

1  Bankruptcy Procedure specifically provide that most required
2  documents can be filed up to 15 days after the petition.  See Fed.
3  R. Bankr. P. 1007(b) and (c).

4      For these reasons we hold that the bankruptcy schedules, SFA,
5  and other required documents can only be filed after the petition,
6  even if all these documents are physically presented to the clerk
7  for filing together or if, as in this case, they are
8  electronically combined into a single electronic file and
9  transmitted onto the bankruptcy court's docket as such.  All the
10 pages of the documents might reach the court at essentially the
11 same instant, but conceptually the case must be commenced before
12 the bankruptcy schedules, SFA, and other required documents can be
13 filed in that case.  Therefore, by definition, these documents
14 cannot provide constructive notice "as of the commencement of the
15 case."  Any constructive or inquiry notice from Debtor's
16 bankruptcy schedules and SFA came too late to defeat Trustee's
17 strong arm power under Section 544(a)(3).

18     Nothing in Professional Investment holds otherwise.  The
19 Ninth Circuit stated, "This case turns on whether the petition
20 itself put the trustee on sufficient inquiry or constructive
21 notice of [the creditors'] prior security interest" and "we will
22 only discuss the ramifications of the petition itself."
23 Professional Investment, 955 F.2d at 627 and 628 n.3 (emphasis
24 added).  In that case the petition itself did give notice:  it was
25 an involuntary petition and in the space provided for describing
26 his claim one of the petitioners stated that his claims were
27 "supposedly secured by assignments of Deeds of Trust . . . in the
28 aggregate amount of approximately $137,500."  Id. at 628 (quoting

-11-

1  involuntary petition).  In this case the petition is voluntary and
2  there is not even a space on the form to give any notice of
3  Chase's Unrecorded Deed of Trust.  See Official Form 1 (voluntary
4  petition).  Trustee had no constructive or inquiry notice of
5  Chase's purported lien from the voluntary petition.  Accordingly,
6  Professional Investment does not compel us to defeat Trustee's
7  strong arm power.  See In re Thomas, 147 B.R. 526, 531 n. 8 (9th
8  Cir. BAP 1992) ("In this case, unlike Professional Investment
9  Properties, the petition made no mention of [the alleged
10 constructive trust interest] in the property"), aff'd, 32 F.3d 572
11 (9th Cir. 1994) (table).[7]

12      Our holding is reinforced by the fact that Chase's reading of
13 Professional Investment could lead to arbitrary results or abuse.
14 If a debtor's bankruptcy schedules happen to be filed after the
15 trustee is appointed -- as often occurs in voluntary Chapter 7
16 cases because of the 15 day grace period for filing bankruptcy

17

18  [7] Trustee argues that Professional Investment is contrary to
    the plain meaning of the statute.  It is true that much of the
19  Ninth Circuit's discussion focused on the time at which the
    trustee in that case was appointed, and that appears to be
20  irrelevant under the statute which focuses on the time of
    "commencement of the case."  11 U.S.C. § 544.  Perhaps the court
21  did not focus on the fact that a hypothetical bona fide purchaser
    is just that -- hypothetical -- so the time of his actual
22  appointment is irrelevant.  See Professional Investment, 955 F.2d
    at 628 ("A trustee who has not yet been appointed can hardly argue
23  that he has been prejudiced by being charged with notice by the
    petition") and 629 ("the trustee had a duty to inquire as to the
24  nature of the [creditors'] claim once he was appointed") (emphasis
    added).  See also In re Wohlfeil, 322 B.R. 302, 305-06 (Bankr.
25  E.D. Mich. 2005) (criticizing Professional Investment as contrary
    to plain meaning of statute).  We do not ignore binding precedent
26  nor do we speculate further.  We simply construe Professional
    Investment to be limited in its application to an involuntary
27  petition wherein the petitioning creditor asserts its lien.  We
    express no opinion as to the outcome in any future case wherein a
28  voluntary petitioner departs from Official Form 1 and inserts
    information about a creditor.

-12-

1  schedules in Fed. R. Bankr. P. 1007(c) -- then presumably there is
2  no constructive notice.  See Castro, 158 B.R. 180 (no constructive
3  notice when trustee was appointed before schedules were filed).
4  Likewise, if the bankruptcy schedules happen not to describe the
5  unperfected claim adequately then there is no constructive notice.
6  See Harvey, 222 B.R. at 895 (vague and inconsistent bankruptcy
7  schedules "did not necessarily imply" ownership interest and
8  therefore did not impart constructive notice).  A debtor might
9  even take advantage of the situation to favor or disfavor one
10 creditor over others by adjusting the content of the bankruptcy
11 schedules or the time when they are filed.

12      In sum, Debtor's bankruptcy schedules and SFA have no bearing
13 on Trustee's strong arm power.  They were filed after "the
14 commencement of the case" so any constructive or inquiry notice of
15 Chase's Unrecorded Deed of Trust came too late to defeat Trustee's
16 statutory power as a hypothetical bona fide purchaser under
17 Section 544(a)(3).

18      B.   Equitable subrogation

19      The bankruptcy court held in the alternative that Chase could
20 defeat Trustee's strong arm power under Section 544(a)(3) using
21 the doctrine of equitable subrogation, up to the dollar amount of
22 the lien under its released Prior Deed of Trust.  The bankruptcy
23 court held that Trustee and Debtor's creditors would not be "worse
24 off" and there was no "injustice" from applying the doctrine.
25 Again, we disagree.

26      Subrogation is a derivative right whereby one party is
27 substituted in the place of another with reference to a lawful
28 claim, demand, or right.  In re Hamada, 291 F.3d 645, 649 (9th

-13-

1 Cir. 2002).  Equitable subrogation is a legal fiction and because
2 it is a creature of equity it "is enforced solely for the purpose
3 of accomplishing the ends of substantial justice."  Hamada, 291
4 F.3d at 649 (citation omitted).  The doctrine is governed by state
5 law and one of the requirements of California law is that its
6 application must "not work an injustice to the rights of others."
7 Golden Eagle Ins. Co. v. First Nationwide Fin. Corp., 31
8 Cal.Rptr.2d 815, 821 (1994); Hamada, 291 F.3d at 651 (same); M.
9 Lilly, Subrogation of Mortgages in California: a Comparison with
10 the Restatement and Proposals for Change, 48 UCLA L. Rev. 1633,
11 1660-61 at n. 120 and accompanying text (2001).

12      Equitable subrogation "allows a person who pays off an
13 encumbrance to assume the same priority position as the holder of
14 the previous encumbrance."  Mort, 86 F.3d at 893.  Even a canceled
15 lien can be revived, but not if "the superior or equal equities of
16 others would be prejudiced thereby."  Lawyers Title Ins. Corp. v.
17 Feldsher, 49 Cal.Rptr.2d 542, 546 (2d Dist. 1996) (citation and
18 italics omitted).  For example, the holder of a junior lien or
19 interest is generally put in no worse situation if a third party
20 who pays off the senior debt is equitably subrogated to the senior
21 lien's priority.  The junior lien or interest holder did not rely
22 on the absence of the senior lien when it first extended credit or
23 transferred value, and would receive a windfall if the doctrine
24 were not applied.  Mort, 86 F.3d at 895.

25      This case is different.  Trustee as a hypothetical bona fide
26 purchaser is deemed to have given value for the Property without
27 any knowledge of Chase's Unrecorded Deed of Trust and in reliance
28 on the real estate records.  Gurs, 27 B.R. at 165; 5 Collier

-14-

¶ 544.08, text accompanying n. 5, p. 544-16.2.  As established in
the previous section of our discussion Trustee had no constructive
or inquiry notice of the Unrecorded Deed of Trust.  Moreover,
Chase had recorded a reconveyance of its Prior Deed of Trust and
Trustee is deemed to have relied on that reconveyance.  See First
Fidelity Thrift & Loan v. Alliance Bank, 71 Cal.Rptr.2d 295 (1998)
(subsequent mortgagee could rely on mistakenly recorded release).

California courts have held that the equities favor a bona
fide purchaser over one asserting equitable subrogation.  See J.
G. Boswell Co. v. W. D. Felder & Co., 230 P.2d 386, 389 (1951)
(rejecting application of equitable subrogation as against bona
fide purchaser); 58 Cal. Jur. 3d, Subrogation § 7 (2006), text
accompanying nn. 10-13 ("subrogation will not be allowed where it
would work an injustice to the rights of others and does not lie
against an innocent person, as where it would jeopardize or defeat
intervening rights, including those of bona fide purchasers
without notice") (emphasis added).

The same result has been reached under the laws of other
states.  See In re Zaptocky, 250 F.3d 1020, 1028 (6th Cir. 2001)
(under Ohio law, "the doctrine of equitable subrogation does not
apply against a bona fide purchaser without knowledge"); In re
Bridge, 18 F.3d 195, 204 (3d Cir. 1994) (trustee prevailed over
creditor who was attempting to rely on its own previously released
lien under equitable subrogation doctrine, applying New Jersey
law).

We can conceive of circumstances in which the equities might
favor application of the doctrine of equitable subrogation, but
Chase has alleged no such circumstances.  See In re Reasonover,

-15-

1  236 B.R. 219, 225-233 (Bankr. E.D. Va. 1999) (under Virginia law,
2  when deed of trust had not yet been released as of petition date,
3  trustee as bona fide purchaser took property subject to mortgage
4  company's equitable subrogation claim), remand after appeal, 238
5  F.3d 414 (4th Cir. 2000) (table), on remand, 2001 WL 1168181
6  (Bankr. E.D.Va. 2001).

7      Trustee's status as a bona fide purchaser is not simply a
8  legal technicality.  It serves "one of the strongest policies
9  behind the bankruptcy laws" -- the policy of ratable distribution
10  among all creditors.  In re Seaway Exp. Corp., 912 F.2d 1125, 1129
11  (9th Cir. 1990) (citation omitted) (avoiding creditor's inchoate
12  equitable interest in real property when creditor had taken no
13  steps to provide actual or constructive notice to subsequent bona
14  fide purchasers).  As stated in Christie-Pequignot, 2003 WL
15  22945921 at *5, a creditor holding a valid and perfected lien is
16  entitled to preferential treatment but granting such treatment to
17  an unperfected lien "would come at the expense of other creditors
18  and would be unjust to the other creditors."  See also Hamada, 291
19  F.3d at 653 (rejecting equitable subrogation as applied to
20  nondischargeability judgment because creditor seeking subrogation
21  made "no claim that [debtor] committed fraud against [creditor]
22  that would entitle it to preferential treatment over other
23  creditors to whom [debtor] owes money").

24      It would be inequitable to apply the legal fiction that Chase
25  had never released its Prior Deed of Trust, thereby giving it
26  nearly the full value of the Property and depriving Debtor's other
27  creditors of a pro rata share of that value.  Congress has
28  determined as much by giving Trustee the status of a bona fide

1  purchaser under Section 544(a)(3).  Chase cannot defeat Trustee's
2  statutory strong arm power based on equitable subrogation.[8]

### VI. CONCLUSION

4       Section 544(a)(3) grants the bankruptcy trustee for the
5  benefit of all creditors the rights of a bona fide purchaser of
6  the real property "as of the commencement of the case."  A
7  debtor's bankruptcy schedules and other required documents cannot
8  be filed until there is a case in which to file them, so by
9  definition they cannot impart any constructive or inquiry notice
10 until after commencement of the case.  Nothing in Debtor's
11 bankruptcy schedules or SFA has any bearing on Trustee's statutory
12 strong arm power to avoid Chase's Unrecorded Deed of Trust.

13      Nor is Trustee's statutory strong arm power defeated by the
14 doctrine of equitable subrogation.  That doctrine is only applied
15 when it will not work an injustice to the rights of others, and if
16 Chase received the entire value of the Property based on its
17 released Prior Deed of Trust rather than sharing pro rata with
18 other creditors that would work an injustice.

19      The judgment in favor of Chase is REVERSED and the case is
20 REMANDED with directions to grant Trustee's motion for summary
21 judgment and enter a judgment in favor of Trustee.

---

28  [8]  We do not address the other elements of equitable
subrogation because Trustee has not argued that those elements are
unsatisfied.

-17-

U.S. Bankruptcy Appellate Panel
of the Ninth Circuit
125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California  (626) 229-7220
Appeals from all other Districts (626) 229-7225

---------------------------
NOTICE OF ENTRY OF JUDGMENT
---------------------------

BAP No.:   SC-06-1132-MoSnK & SC-06-1063-MoSnK (Consolidated)

RE:        JILL C. DEUEL

A separate Judgment was entered in this case on DECEMBER 28, 2006.

BILL OF COSTS:
-------------
Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the
Clerk of the Bankruptcy Court.  Cost bills should be filed with the Clerk
of the Bankruptcy Court from which the appeal was taken.
9th Cir. BAP Rule 8014-1

ISSUANCE OF THE MANDATE:
-----------------------
The mandate, a certified copy of the judgment sent to the Clerk of
the Bankruptcy Court from which the appeal was taken, will be issued
7 days after the expiration of the time for filing a petition for
rehearing unless such a petition is filed or the time is shortened or
enlarged by order.  See Federal Rule of Appellate Procedure 41.

APPEAL TO COURT OF APPEALS:
--------------------------
An appeal to the Ninth Circuit Court of Appeals is initiated by
filing a notice of appeal with the Clerk of this Panel.  The Notice
of Appeal should be accompanied by payment of the $455 filing fee
and a copy of the order or decision on appeal.  Checks may be made
payable to the U.S. Court of Appeals for the Ninth Circuit.  See
Federal Rules of Appellate Procedure 6 and the corresponding Rules of
the United States Court of Appeals for the Ninth Circuit for specific
time requirements.

## CERTIFICATE OF MAILING

-------------------------------------------------

The undersigned, deputy clerk of the U.S. Bankruptcy
Appellate Panel of the Ninth Circuit, hereby certifies that a copy
of the document on which this certificate appears was mailed this date
to all parties of record to this appeal.

By: Vincent J. Barbato
Deputy Clerk: December 28, 2006

CASE NAME:   JILL C. DEUEL

BAP NO: SC-06-1132-MoSnK and SC-06-1132-MoSnK (Consolidated)

Bk. NO: 04-02787-JH7                     Adv. NO: 06-90460

PROOF OF SERVICE MANDATE
_____

A certified copy of the attached judgment was sent to:

    CLERK

    U.S. BANKRUPTCY COURT

at  Jacob Weinberger Courthouse
    325 West "F" Street

    San Diego, CA 92101

on  1/31/07

By: Edwina Clay
    Deputy Clerk

    Date: January 31, 2007